## UNITED STATES v. STEESE.

### No. 8545.

Circuit Court of Appeals, Third Circuit.
Submitted on Briefs Feb. 7, 1944.
Decided Aug. 25, 1944.

---

Appellant for himself.

Gerald A. Gleeson and Edward A. Kallick, both of Philadelphia, Pa., for appellee.

Before BIGGS, GOODRICH, and McLAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal from an order of the District Court of the United States for the Eastern District of Pennsylvania denying a motion filed by the appellant, Frederick Steese, the object of which, in his words, was to have a conviction against him "declared null and void to the end that it be expunged from the records." The petitioner's original motion stated that he is incarcerated in the New York State Prison, having been convicted of the crime of forgery in that state. It said that he is serving an indeterminate term, the minimum of which is five years and the maximum ten years; five years of this term, he said, was imposed as additional punishment because there appeared upon his criminal record a notation to the effect that on July 24, 1935 he was convicted of the crime of forgery in the United States District Court for the Eastern District of Pennsylvania. The petition went on to say that this conviction in the United States District Court was illegally secured by the court, the said court "having ignored and disregarded his rights to the assistance of counsel for his defence" and offered as an exhibit a copy of the record of his conviction in the District Court. It was alleged, also, in the petition, that the prayed adjudication would enable appellant to ask the courts of New York for resentence as a first felony offender. The other averments of the petition are either irrelevant or argumentative conclusions of law. The document was submitted by petitioner, Steese, over his own signature without, so far as the record shows, the assistance of counsel.

The docket entries in the District Court of the United States for the Eastern District of Pennsylvania, June 1934 Term, in the case of United States of America v. Frederick Steese show the finding of a true bill on September 7, 1934, issue of a bench warrant September 14, 1934, plea of guilty July 24, 1935 and the imposition of sentence: "Imprisonment in a County Jail for term of one year—suspended. Probation three years."

These are all the facts which the District Court had before it when the appellant's motion was presented. There was no allegation there on the part of the petitioner that he was not guilty of the crime of which he was charged; no claim that he did not intelligently waive his right to counsel and did not knowingly plead guilty nor did he even allege that he was not advised of his right to counsel. However, in considering the petition the District Judge considered the matter "as though the defendant had pleaded that he was not so advised by the Court [of his rights to counsel] and that such inquiry was not made." The District Judge, however, found nothing to indicate that the right to counsel had not been intelligently waived. He therefore denied the motion.

We think that on the case as it was presented to the District Judge, including his assumption of fact in petitioner's favor, that his conclusion was correct. The cor-

stitutional provision in the Sixth Amendment entitling one accused of crime to have the benefit of counsel has received renewed and extended force and application through recent decisions of the Supreme Court. It applies both to situations where defendant pleads not guilty and goes to trial[1] and where he pleads guilty.[2] At the same time "the constitution does not force a lawyer upon a defendant. He may waive his constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open."

■ In order that an accused person's constitutional rights to counsel be protected is it incumbent, to uphold a judgment of conviction, to show affirmatively that a defendant pleading guilty was advised of his rights to counsel and that he understandingly rejected the opportunity for legal advice? Unless we are prepared to go that far the District Judge committed no error in the hearing before him. That the constitutional requirement does go this far seems to be the point of view of the United States Court of Appeals for the District of Columbia.[3] The Ninth Circuit, at about the same time, declared the contrary, saying "waiver of counsel is usually to be implied from the appearance of an accused without counsel, and his failure to request counsel. * * * This is particularly true when the accused by his plea of guilty has rendered a trial unnecessary."[4] While it is highly desirable to prevent subsequent disputes and misunderstanding that an accused, if he wishes to waive the right to counsel, should do so in a writing which becomes part of the record, we do not think the rule goes so far that the absence of the waiver as a matter of record or the failure of the judge expressly to advise the defendant is, by itself, sufficient to invalidate a conviction on constitutional grounds.

The instant case, however, has grown more complicated since coming to this Court. Among the documents which the appellant puts before us is a recital which he denominates a "case history." In it the appellant makes many allegations of fact.

He says that in 1934 he was serving a sentence in a county prison in Pennsylvania for the crime of uttering a worthless check, a misdemeanor under Pennsylvania law and no crime at all under federal statutes. While serving this sentence he states that he was visited by a person who described himself as an United States Postal Inspector who informed the defendant that he had been indicted by a Federal Grand Jury for the crime of forging a Post Office money order. This person, defendant says, informed him that if he would sign a certain document he would undoubtedly receive a suspended sentence, but that if he decided to go to trial a sentence of ten years would likely be imposed upon him. At this time, says the petitioner, he was but nineteen years of age and incarcerated as a convicted prisoner for the first time. He says he signed the document without reading it. His statement continues to the effect that when he was released from the county prison he was taken by a Deputy United States Marshal before the United States District Court, was in the courtroom less than five minutes and that throughout the entire proceedings he spoke no words to anyone nor were any words except the sentence of the Court addressed to him. In the Government's brief in this Court there is included a copy of a Federal Bureau of Investigation report on petitioner. In the document denominated "Reply Brief" the latter vigorously disputes the correctness of entries in this report.

■ We cannot find error on the part of the trial judge upon the basis of the allegation of facts brought to us for the first time. If the present litigation were a civil case, with an appellant represented by counsel, we should have no hesitation in refusing to consider as part of an appeal allegations of fact not presented to the court below. This case is on a different basis. The appellant represents himself to be a person of limited education, he is conducting his own appeal in forma pauperis. We should not, and do not, apply to him requirements imposed in the usual case for the purpose

[1] Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357; see also Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Adams v. United States ex rel. McCann, 1942, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268, 143 A.L.R. 435.

[2] Walker v. Johnston, 1941, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830.

[3] Evans v. Rives, 1942, 75 U.S.App.D.C. 242, 126 F.2d 633; the opinion of the court collects the recent federal decisions on the subject. The citations need not be repeated here.

[4] O'Keith v. Johnston, 9 Cir., 1942, 129 F.2d 889, 890.

of securing orderly administration of judicial business. The appellant's story may or may not be established as a fact if opportunity is given for hearing evidence and deciding facts. If his statements are found to be true the conclusion may well be that he was deprived of constitutional protection by the over-zealousness of Government officers. It may be true that even the setting aside of this conviction would not help the appellant; that he has been convicted of other felonies, and a petition to the New York courts must fail in any event. Appellant says that his record shown in the Federal Bureau of Investigation report is incorrect. We have no way of knowing whether it is or not. Only a hearing of the facts can establish the truth or falsity of these allegations.

■ There is a further point stressed by counsel for the Government. It is that there is no way by which this case, thus sought to be reopened by motion many years after the term has expired in which the judgment of conviction was had, may be opened. Certain it is that the time for motion for a new trial or for an appeal has long since passed.[5] Habeas corpus is not available in this district as petitioner is not here confined.[6] The Supreme Court has expressly refrained from passing upon the question whether district courts may exercise in criminal cases a correctional jurisdiction at subsequent terms.[7] We think, however, a court is not helpless to remedy an injustice, if one is proved to have been committed, which goes to the extent of depriving a man of his constitutional rights. The motion in the particular case may be treated, for this purpose, as a modern substitute for the ancient writ of error coram nobis.[8] We think the present question involving protection of one's rights under the constitution is just as fundamental as those for the protection of which this time honored writ was devised and used in the early common law procedure.

The judgment of the District Court is, therefore, vacated and the case remanded to that court to give the petitioner an opportunity to present evidence to establish his allegations of fact which would show that his original conviction was in violation of his rights under the Sixth Amendment of the Constitution of the United States.

BIGGS, Circuit Judge (concurring in part and dissenting in part).

While concurring in many respects with the views expressed by the majority, I think it desirable to make clear my reasons for concluding that the order of the court below should be reversed.

The appellant, Steese, was indicted by a grand jury of the District Court of the United States for the Eastern District of Pennsylvania at the June 1934 Term on two counts charging him with violations of Section 218 of the Criminal Code, 18 U.S.C.A. § 347. It was alleged that he had forged a signature to a United States Postoffice Department Money Order and had uttered it. On July 24, 1935, he was brought before the court below and, pleading guilty, was sentenced. A sentence of one year was imposed upon him which was suspended and he was placed upon probation for a period of three years. On August 2, 1943, eight years later, and after the expiration of more than thirty terms from that at which he was sentenced, Steese filed a motion in the court below with an accompanying affidavit, alleging that that court in sentencing him had "ignored and disregarded his rights to the assistance of counsel for his defense," and that therefore the judgment of conviction against him was void and should be set aside.

It is conceded that Steese was not represented by counsel when he entered a plea of guilty to the indictment on July 24, 1935. Judge Kirkpatrick stated in his opinion[1] denying the motion here under consideration: "In order that he [Steese] may not now be deprived of any right by reason of any technical failure to plead facts which could be established on a hearing I may say that at the time of his conviction it was

---

[5] See rules 2 and 3 of the Rules of Criminal Procedure, 18 U.S.C.A. following Section 688.

[6] United States ex rel. Harrington v. Schlotfeldt, 7 Cir., 1943, 136 F.2d 935; Jones v. Biddle, 8 Cir., 1942, 131 F.2d 853, certiorari denied, 1943, 318 U.S. 784, 63 S. Ct. 856, 87 L.Ed. 1152, rehearing denied, 1943, 319 U.S. 780, 784, 785, 63 S.Ct. 1027, 1325, 1431, 87 L.Ed. 1725, 1728; United States ex rel. Belardi v. Day, 3 Cir., 1931, 50 F.2d 816.

[7] United States v. Mayer, 1914, 235 U. S. 55, 69, 35 S.Ct. 16, 59 L.Ed. 129.

[8] For a discussion of the writ by a modern case authority see Orfield, The Writ of Error Coram Nobis in Civil Practice (1934) 20 Va.L.Rev. 423.

[1] Unreported.

not customary specifically to advise each defendant of his right to counsel or inquire of him whether he desired legal assistance, and I will consider the matter as though the defendant had pleaded that he was not so advised by the Court and that such inquiry was not made." The learned District Judge went on to state that assuming that the appellant had pleaded that the court had not advised him of his right to counsel and had not inquired whether he desired legal assistance, such averments [if proved] would be insufficient to establish the invalidity of the judgment of conviction because, citing O'Keith v. Johnston, 9 Cir., 129 F.2d 889, 891, it does not appear from the record that the appellant's right to counsel was not "competently and intelligently" waived by him.[2] Judge Kirkpatrick concluded that the appellant competently and intelligently waived his right to counsel because when he came before the court for sentence "* * * he [Steese] had completed a term in the state prison for the same forgery which had constituted the Federal offense, and previous to that he had been imprisoned upon another charge for a similar offense." Though these statements as to Steese's prior imprisonment are not supported by the record I regard them as correct,[3] but I am unwilling to agree that appearances in a court or incarcerations in a prison necessarily bring to a defendant knowledge of his constitutional rights.

Putting all conclusions and inferences not justified by the record to one side, I am forced to the conclusion that Judge Kirkpatrick based his decision on an untenable ground when he denied the appellant's motion for the learned Judge stated: "It does not appear from the record of * * * [Steese's] conviction * * * that his right to counsel was not 'competently and intelligently' waived by him." In my opinion it does not appear from the record[4] that Steese "competently and intelligently" waived his right to counsel, and

---

[2] Judge Kirkpatrick made use of the following quotation from Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 146 A.L.R. 357:

"The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

[3] Attached as an appendix to the brief of the United States filed in this court is a synopsis of the appellant's criminal record. The correctness of Judge Kirkpatrick's statement is borne out by this synopsis.

It should be pointed out, if the statement as to Steese's prior imprisonment is to have weight, that in his brief filed in this court he asserts that he was nineteen years old at the time of the federal indictment. If this be true he was only twenty years old when he pleaded guilty.

[4] The docket entries in the District Court show that the indictment against Steese was returned on September 7, 1934; that he was arraigned on July 24, 1935, and pleaded guilty and was sentenced the same day. The clerk's minutes of July 24, 1935, contain the following entries: "Plea: Guilty—Sentence: Imprisonment in a County Jail for a term of one year—Suspended—Probation three years." There is nothing more. How may a defendant show that he was not "competently and intelligently" waived his right to counsel? Should he bring into court his own reporter and make a statement to be subsequenly transcribed and placed with the papers of the case? Or should he require the clerk to include his statement in the minutes of the court? These suggested courses might not occur to a young defendant brought into court without counsel.

Compare the situation which will exist when the Court Reporter Act, Act of January 20, 1944, 28 U.S.C.A. § 9a (Judicial Code section 5a), is put in effect. The Act provides in part that the official reporter shall attend at each session of the court to which he is appointed and "* * * shall record verbatim * * * all proceedings in criminal cases had in open court, whether in connection with plea, trial, or sentence * * *." The Act also provides that the reporter shall "* * * transcribe and certify all pleas and proceedings in connection with the imposition of sentence in criminal cases and such other parts of the record of proceedings as may be required by rule of procedure or order of court."

Without regard to the Court Reporter Act, since the decision of the Supreme Court in Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830, it has been, I believe, the universal practice in the district courts of this circuit for the court to inquire whether or not a defendant has counsel, to inform him of his constitutional rights and to attempt to assign him counsel if he has none. Some of our district courts have required the defendant who does not have counsel and who waives his right thereto to sign a statement to that

therefore, since a constitutional right of an accused was involved, the presumption of regularity which ordinarily attends a judgment when it is attacked collaterally, fails. It is my opinion, therefore, since it does not appear affirmatively from the record or minutes that Steese intelligently and competently waived his right to counsel, that he should be given the opportunity, if it lies within the law, to show that he did not do so.

It is true, as the majority points out, that nowhere in his moving papers does the appellant allege that he is innocent of the charges laid against him in the indictment. The establishment of the guilt or innocence of an accused is the essence of any criminal proceeding, but under our system the guilt of an accused must be established according to law. If the constitutional provisions safeguarding the rights of a defendant have not been observed, his right to a new trial is not lost because he does not assert his innocence. It would be unusual indeed for a defendant, who had been convicted by a jury and had moved in arrest of judgment and for a new trial, to assert in his moving papers that he had not committed the crime with which he was charged.

The great obstacle which the appellant faces is that the time for a motion for a new trial or for an appeal from his judgment of conviction has long since passed. See Rules 2 and 3 of the Rules of Criminal Procedure, 18 U.S.C.A. following section 688. And it must be conceded that following the expiration of the term, unless it be to correct a clerical error or inadvertence, a district court of the United States is without power to set aside or otherwise void a judgment except under the most exceptional circumstances. United States v. Mayer, 235 U.S. 55, 67, 35 S.Ct. 16, 59 L. Ed. 129; In re Metropolitan Trust Co., 218 U.S. 312, 320, 31 S.Ct. 18, 54 L.Ed. 1051.

May Steese's motion be construed as being in the nature of a petition for a writ of error coram nobis addressed, long after the end of the term at which he was sentenced, to the court which imposed judgment upon him? At common law the extraordinary power to set aside a judgment after the expiration of the term might be exercised by the nisi prius tribunal on the issuance of a writ of error coram vobis or coram nobis.[5] In Pickett's Heirs v. Legerwood, 7 Pet. 144, 147, 8 L.Ed. 638, a civil case, the Supreme Court through Mr. Justice Johnson said: "It cannot be questioned, that the appropriate use of the writ of error coram vobis is, to enable a court to correct its own errors—those errors which precede the rendition of judgment. In practice, the same end is now generally attained by motion; * * *." I conclude therefore, as does the majority, that Steese's motion may be treated as the modern equivalent of a petition for the writ.

Two questions must be answered, however. First, has the court below the power to grant the motion or issue the writ, assuming that Steese did not waive his right to counsel intelligently and competently? Second, if the first question be answered in the affirmative, was it a breach of legal discretion on the part of the court below to deny the appellant's motion on the present record?

In the case of Pickett's Heirs, 7 Pet. 147, 8 L.Ed. 638, Mr. Justice Johnson said: "The cases for error coram vobis, are enumerated without any material variation in all the books of practice, and rest on the authority of the sages and fathers in the law. I will refer to the pages of Archbold for the following enumeration (1st Vol. 234, 276-9): 'Error in the process, or through default of the clerk; error in fact, as, where the defendant, being under age, sued by attorney, in any other action but ejectment; that either plaintiff or defendant was a married woman, at the commencement of the suit; or died before verdict or interlocutory judgment and the like.'" Mr. Justice Johnson also indicated that the issuance of the writ was a matter

effect. Other district judges require a note of the defendant's waiver of counsel to be spread upon the minutes of the court. It seems appropriate that one of these two methods be followed until the provisions of the Court Reporter Act are implemented.

5 It seems unnecessary to devote any extended discussion in this opinion to the name of the writ, viz., whether is should be designated as a writ of error coram vobis or coram nobis. As to the nature and the correct name of the writ, see United States v. Plumer, 27 Fed.Cas. 561, at page 573, No. 16,056. See also Vol. 3, Temple Law Quarterly, at pp. 366–371; Tidd's Practice, pp. 1133–34; Stephen's Pleading at p. 142; 31 Illinois Law Review at pp. 646, 647; 20 Virginia Law Review, pp. 425–426; 17 Notre Dame Lawyer, pp. 274, 275. The writ will be referred to throughout this opinion as the writ of error coram nobis.

in the legal discretion of the trial court. This has been said many times. See Phillips v. Negley, 1886, 117 U.S. 665, 678, 6 S. Ct. 901, 29 L.Ed. 1013; Lupfer v. Carlton, 5 Cir., 1933, 64 F.2d 272, 273; and Moore's Federal Practice, Vol. 3, p. 3257, under the heading "The Writ of Error Coram Nobis (or Coram Vobis)". See also the decision of this court in United States v. Lynch, 3 Cir., 132 F.2d 111, 113.

In United States v. Mayer, 235 U.S. at page 69, 35 S.Ct. at page 19, 59 L.Ed. 129, however, Mr. Chief Justice Hughes stated: "This jurisdiction [of the district courts to exercise a correctional jurisdiction at subsequent terms analogous to that exercised at common law on writs of error coram nobis] was of limited scope; the power of the court thus to vacate its judgment for errors of fact existed * * * in those cases where the errors were of the most fundamental character; that is, such as rendered the proceeding itself irregular and invalid." At an earlier point in the opinion, 235 U.S. at page 68, 35 S.Ct. at page 19, 59 L.Ed. 129, Mr. Chief Justice Hughes described the "errors in matters of fact" to obviate which the writ might issue from the trial court in almost the same terms as did Mr. Justice Johnson who, as we have stated, had quoted Archbold in Pickett's Heirs v. Legerwood, supra. Mr. Chief Justice Hughes said: "These writs [of error coram nobis] were available to bring before the court that pronounced judgment errors in matters of fact which had not been put in issue or passed upon, and were material to the validity and regularity of the legal proceeding itself; as where the defendant, being under age, appeared by attorney, or the plaintiff or defendant was a married woman at the time of commencing the suit, or died before verdict or interlocutory judgment, * * *" Obviously, the errors in matters of fact referred to by Mr. Chief Justice Hughes relate to the capacity of the plaintiff or the defendant to sue or be sued as well as to the power of the court to render a valid judgment.

The United States contends that since the Supreme Court in United States v. Mayer restricted the writ of error coram nobis to errors in matters of fact and expressly left open the question whether the writ might issue from a district court even in such cases, the court below was without jurisdiction to issue the writ or its equivalent in the case at bar. I can perceive no reason, however, to support this contention of the appellee. The writ of error coram nobis was ancient even in the common law. See note 5 supra. Though it was held in United States v. Port Washington Brewing Co., D.C., 277 F. 306, that the writ had been abolished in the federal courts, in Waley v. Johnston, 316 U.S. 101, 105, 62 S.Ct. 964, 86 L.Ed. 1302, the Supreme Court, vacating a judgment of the Court of Appeals for the Ninth Circuit which had affirmed a decree of a district court denying an application for a writ of habeas corpus, certainly treated the writ of error coram nobis as if it still existed.[6] United States v. Mayer certainly cannot be considered as terminating the existence of the writ of error coram nobis or its equivalent in the district courts since the question of its existence expressly remained undecided.

The United States goes further, however, and contends that Section 262 ("All Writs") of the Judicial Code, 28 U.S.C.A. § 377, does not authorize a district court of the United States to issue the writ of error coram nobis, citing McClung v. Silliman, 6 Wheat. 598, 5 L.Ed. 340; United States v. More, 3 Cranch 159, 172, 2 L.Ed. 397; Fink v. O'Neil, 106 U.S. 272, 280, 1 S.Ct. 325, 27 L.Ed. 196. None of the decisions cited is really apposite, but that of McClung v. Silliman requires some consideration. In the McClung case, 6 Wheat. 601, 5 L.Ed. 340, Mr. Justice Johnson stated that "The 14th section of the [Judiciary] act [of 1789, 1 Stat. 73, whence stems the present "All Writs" Section] under consideration could only have been intended to vest the power [to issue a writ of mandamus][7] * * * in cases where the jurisdiction already exists, and not where it is

---

[6] The Supreme Court stated, 316 U.S. at page 105, 62 S.Ct. at page 966, 86 L.Ed. 1302, "It does not appear that on petitioner's earlier application for a writ of coram nobis the same issue was raised as that now presented. The earlier application was denied for insufficiency upon its face and without a hearing. There is thus no basis for the holding of the district court

that the denial is res judicata of the present petition."

If the Supreme Court had been of the opinion that a district court did not have power to grant the writ of error coram nobis, the issue of res judicata would have been dismissed summarily.

[7] The writ of mandamus was denied by a state court to a federal officer under cir-

to be courted or acquired, by means of the writ proposed to be sued out. * * *" Arguing from the McClung case the government asserts that at the English common law the writ of error coram nobis commenced an entirely new proceeding, citing 2 Bouv.Law Dict., Rawle's Third Revision, "Writ of Error," p. 3498, and basing its argument upon much of what was said by Circuit Justice Clifford in United States v. Plumer, 27 Fed.Cas. at pages 573, 574, No. 16,056.

The authorities cited and the arguments made in the Plumer case need not be repeated here. While the writ of error coram nobis came into existence as an "original" writ in the sense that it was a writ by which a new proceeding was commenced, so likewise did the writ of scire facias and the writ of mandamus, but these writs, like the writ of error coram nobis, have been employed many times as auxiliary to the jurisdiction of a court in a pending suit. See Winder v. Caldwell, 14 How. 434, 14 L.Ed. 487; Ewing v. United States, 6 Cir., 240 F. 241; Marbury v. Madison, 1 Cranch 137, 175, 2 L.Ed. 60. Original jurisdiction for the purpose of adjudicating criminal cases was conferred on the district courts of the United States by Section 24 of the Judicial Code, 28 U.S.C.A. § 41, and the same section conferred original jurisdiction on these courts to adjudicate civil causes. I think that in the exercise of either jurisdiction the district courts may employ any and all writs appropriate in aid of the jurisdiction conferred upon them by Section 24 of the Judicial Code.

To hold otherwise would place Rule 60(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, providing for the relieving of judgments procured by surprise or excusable neglect, a true "correctional jurisdiction", in peril.[8] The rule applies to the correction of inadvertences or misprisions of the clerk which always could be rectified after the end of the term, but it goes further and may serve to relieve of a judgment procured by surprise or because of the excusable neglect of a party or his legal representative after the end of the term. Cavallo v. Agwilines, Inc., D.C., 2 F.R.D. 526; McGinn v. United States, 2 F.R.D. 562, 563. Compare Section 473 of the California Code of Civil Procedure (Deering, 1937), former Equity Rule 72, 28 U.S.C.A. § 723 Appendix, and the provisions of Rule 6(c) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. See Moore's Federal Practice, Volume 3, pp. 3254–3257, and Preveden v. Hahn, D.C., 36 F.Supp. 952. In the case last cited the District Court of the United States for the Southern District of New York held that the relief afforded by Rule 60(b) was analogous to that formerly given by the writ of error coram nobis. The Rules of Civil Procedure were adopted by the Supreme Court pursuant to the rule-making Act of 1934, 48 Stat. 1064, 28 U.S.C.A. §§ 723b, 723c. In adopting the Rules the Supreme Court did not effect changes in the substantive law and it seems to have assumed the existence of a jurisdiction or power in the district courts to effect by motion the relief formerly granted upon the issuance of a writ of error coram nobis.

If the writ or its equivalent be available for use in civil suits, a fortiori it should be deemed to be available in criminal cases within the area delimited by the Supreme Court in United States v. Mayer. Indeed the inferior courts of the United States have not lately doubted the existence and availability of the writ. See Robinson v. Johnston, 9 Cir., 118 F.2d 998, 1001;[9] Tinkoff v. United States, 7 Cir., 129 F.2d 21; United States v. Lynch, supra. See also Rule 47(b) of the proposed new Rules of Criminal Procedure, Second Preliminary Draft, which provides that the period of time provided for doing any act or taking of any proceeding is not to be affected or limited by the expiration of a term of court and that "* * * the expiration

---

cumstances which need not be discussed here.

[8] The Rule provides in part: "On motion the court, upon such terms as are just, may relieve a party or his legal representative from a judgment, order, or proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect. The motion shall be made within a reasonable time, but in no case exceeding six months after such judgment, order, or proceeding was taken. A motion un-

der this subdivision does not affect the finality of judgment or suspend its operation."

[9] Certiorari denied United States ex rel. Robinson v. Johnston, 314 U.S. 675, 62 S.Ct. 177, 86 L.Ed. 540, rehearing denied 314 U.S. 713, 62 S.Ct. 358, 86 L.Ed. 568, second rehearing granted and case remanded 316 U.S. 649, 62 S.Ct. 1301, 86 L.Ed. 1732. See the disposition of the cause by the Circuit Court of Appeals for the Ninth Circuit on remand, 130 F.2d 202.

of a term of court in no way affects the power of a court to do any act in a criminal proceeding." The expedient of extending a term of court in order to preserve the rights of defendants in criminal causes is well known to the present federal criminal practice and I can perceive but little difference in this method by which a convicted defendant may be brought back into court if he has been denied substantial justice and in granting a motion for the same purpose after the end of the term.

But more cogent reasons than any I have given lead me to the conclusion that the court below may grant the writ or the motion, assuming that Steese did not waive his right to counsel competently and intelligently. In Johnson v. Zerbst, 304 U.S. 458, 467, 468, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461, 146 A.L.R. 357, Mr. Justice Black stated: "Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty. When this right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence. If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty. A court's jurisdiction at the beginning of trial may be lost 'in the course of the proceedings' due to failure to complete the court—as the Sixth Amendment requires—by providing counsel for an accused who is unable to obtain counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake. If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed. The judgment of conviction pronounced by a court without jurisdiction is void, and one imprisoned thereunder may obtain release by habeas corpus."

Assuming that the appellant in the case at bar, not represented by counsel, did not intelligently and competently waive his right to be represented by counsel, the error committed is closely assimilable to "errors in matters of fact" referred to in United States v. Mayer as the possible field for the issuance of the writ of error coram nobis. Moreover, the error would be, to employ the language of Mr. Chief Justice Hughes in the cited case " * * * of the most fundamental character; that is, such as [would render] the proceeding itself irregular and invalid."; the appellant's need for counsel insofar as the record shows was " * * * not been put in issue or passed upon, and [was] material to the validity and regularity of the legal proceeding itself; * * *." If Steese did not waive his right to counsel competently and intelligently, the court below, by reason of the principle enumerated in Johnson v. Zerbst, lost jurisdiction of the proceeding and the judgment of conviction rendered by it against him was void. I conclude therefore that under the circumstances of the case at bar the District Court has the power to grant the appellant's motion, that is to say, to issue the writ or grant the motion if it should appear on determination of the facts that Steese did not waive competently and intelligently his right to be represented by counsel.

If the appellant did not competently and intelligently waive his right to counsel, the court below possessed and possesses the power to rectify that wrong. I conclude therefore that the court committed a breach of legal discretion in denying the appellant's motion on the record which was before it.

I am of the opinion that the order denying the appellant's motion should be reversed and that the cause should be remanded to the court below with directions to reinstate the motion and determine the issues of fact and law presented.